Good morning. May it please the Court, Counsel, I would like to reserve a couple of minutes for rebuttal. Well, the yellow light will go on at that point, but you have to manage your own time. Yes, sir. I seek oral argument to make a few points with regard to my client, Seasons Hospice, that I believe placed Seasons in the category of the cases where federal court jurisdiction has been assumed on a waiver of the failure to exhaust administrative remedies and to distinguish our case, the Seasons case, from cases in which such a waiver has been from the process of recoupment. It does not seek a determination on the merits. We seek relief based on a request for an injunction or mandamus or some combination of the two, which forces the Secretary to assume the responsibility as mandated by Congress to provide a meaningful and appropriate hearing for Seasons within the 90-day period and to have a decision issued within the 90-day period from the time that the appeal was filed. I think significant in this case, as it relates to other cases that have been decided on this issue, both pro and con to Seasons' position, is the fact that there is no alleged fraud in this case. There is no alleged misrepresentation in this case. This is a case involving an allegation of overpayment based upon contractors who are engaged by the Secretary, who are paid based upon the amount of overpayment that they are able to determine, and whose record is dismal, to say the least, as it relates to identifying and having those overpayments sustained. So you're not seeking an order requiring any time in the hearing? Well, I would certainly... You're only seeking some limitation on the recoupment process? I think that the two work in combination. So, to the extent that the District Court is uncomfortable, or this Court would be uncomfortable issuing the injunction on recoupment, but would characterize its ruling in such a way as to suggest the Secretary either or. Either provide the hearing, or stop the recoupment process, we would be seeking the order to provide the hearing. Either stop recruitment, or provide the hearing. So I think some combination of the two. But I think the simple... How is that a problem in all those line jumping cases, where you're just asking to go ahead because you've got a problem and everyone else has a problem? The very purpose for the oral argument. We're not in that same scenario, based upon the way the case is currently. Nobody else has recoupment issues? They certainly do. I don't know who else is in line, but I assume other people have similar problems? Maybe not. You can tell me. No, I'm sure a number of people who are in the same position as we are. But it's not a question of telling the Secretary, hey look, let these people jump the line. It's a question of telling the Secretary, it's your responsibility, so make your choice. Either provide the hearing, or in the interim, stop the recoupment process. And the government has argued in a number of these other cases, where groups of health care professionals have gotten together to bring these bandanas cases. Well, we can't settle these cases, we can't pay these claims, because to do so would violate the Medicare Act because they're not appropriate or eligible services. That issue does not exist in the recoupment case. There's no contention on the part of the government that the claims that are currently being submitted to CMS are anything but eligible services. So it's just a question of whether or not you stop the recoupment from the eligible services. You're not asking the Secretary to violate the act by simply stopping the recoupment. You don't have to have a line jumping situation. You certainly don't have that issue with regard to the payment for eligible services. It simply is a choice by the court to determine upon whom the burden should fall. In this particular case, Congress has clearly mandated that if, in fact, a person in the situation of seasons has an issue with the determination at the second level of appeal, that they have a right to go to the ALJ and ask for a hearing. That hearing is to take place, and a decision is to be rendered within a very short period of time, 90 days. And we're not talking about minor delays here. It's not a question or a situation where you've got somebody who asked for a hearing, and there's a six-month delay, which you might suggest is contemplated by the escalation provision of the statute itself, or a one-year delay. My client was entitled to a decision within 90 days. As of today, we're working on somewhere around 1,100 days. I'm sorry? Wouldn't you have escalated long ago? I certainly could have escalated long ago, but the escalation, as the district court and the circuit court, the D.C. Circuit Court has indicated, comes with some real difficulties for the person in the position of seasons hospice. By escalating, we take the risk, because the DAB's review, if it so chooses, is on the record. This is why seasons' position, as it currently exists, is so much different than some of the other people who brought this case, because we're in a situation where, just to recount the factual scenario... You'd have to seek to expand the record to the DAB, but there is a provision for that, as I understand. There is a provision for it, but it's completely discretionary to the DAB. Well, it's subject to judicial review, so if it were arbitrarily denied, we could get relief, but go ahead. We could, but the question then becomes, okay, should we be required to take that risk? Because, clearly, that risk does not exist at the ALJ level. So, by escalating, we're clearly giving up our rights under the statute to have the hearing that we're entitled to at the ALJ level. While I don't disagree with the court that the option of expanding the record exists at the DAB, or then, ultimately, from the DAB to the appeal to the district court, it then goes from being a requirement to discretionary. And that's a very real right and a very real opportunity for prejudice. If the district court lacked jurisdiction, because of what the DAB tells us, where would that leave us on mandating two months? Well, I think the jurisdiction for mandamus is under a different provision. Do you believe it's in the alternative? We did, and there's been some suggestion in the government's brief that it wasn't properly laid out in our complaint. And I would point the court to, yes. And I can point the court to exactly where it is. And it's on page 6, paragraph 16 of our complaint. It's also in our motion papers for a request for an injunction, specifically asking for mandamus. And it's acknowledged and argued on behalf of the government in their response at page, 120 and 121 of the joint appendix submitted to the court with our appeal. So both sides were aware of it. Both sides briefed it. And certainly, it was submitted to the court. Now, the court chose not to address it at all, which is one of the issues that we have. With regard to the individual components of the waiver argument, the district court did find that Ceason's request was collateral to the underlying claim. We certainly have no dispute or argument with the court on that determination. However, the government in its brief has suggested that that is not the case, in that we were relying upon an expert witness's testimony in the hearing on the motion to dismiss. And while that is absolutely true, we did call an expert. As the court, I'm sure, knows, the fact of the matter is that in trying to get an injunction in this circumstance, we are required to demonstrate to the district court that there is the likelihood of success on the merits when the merits, in fact, do come before the court. So we called the expert for the sole purpose of suggesting to the court that if the court were considering granting the injunction, that we had an expert witness who had examined the record and did, in fact, find the necessary documentation required under the Medicare Act to rebut the findings of the QIC. And again, back to that particular factual situation, which I think is particularly relevant to this case, and perhaps unique to this case, although I can't say for certain, and that is what happened at the second level, the QIC level. So ordinarily what you have is an appeal. They come in, and what happened in this case, at the first level, certain of the claims were, in fact, rebutted and then ultimately dismissed. At the second level, the QIC comes in and basically looks at all those claims and did, in fact, sustain CSEN's position with regard to each of those patients with the exception of three. So we're down to simply three patients at that point. But then reinstates 12 of the ones that they sustained CSEN's position on based on completely new grounds that were not provided to CSEN's at the time of the review. That is part of the QIC's determination. And then when CSEN's attempted to submit additional evidence to the QIC to rebut the new allegations for the 12 patients that they reinstated, the QIC refused to accept the information, thus putting us in that position where we're in, where if we escalate, we go from being allowed, without discretion, to provide that information to an ALJ, to the situation where we are then ultimately at the discretion of the DAB and then ultimately the district court as to whether or not we're allowed to supplement the record. How much money is involved here at recoupment? Well, initially the recoupment amount was about $2.4 million. This has been going on for close to three and a half years at this particular point. And depending on whether you, at the time of the hearing, there was a little over $1.3 million, I believe, still owed under the recoupment process. We certainly would suggest that the injunction, to the extent it's granted, or relief is granted, that it should be, as of the date, at the very least, as of the date of the injunction. Why is it clear and indisputable right to an injunction against further recoupment? Yes. My statement with regard to that is that the hearing is mandated. That by granting the injunction, the burden of the failure to provide the hearing as required under the statute then falls upon the government, whose actions are responsible for the failure to provide this absolutely fundamental right to Seasons Hospice. And that in doing so, we don't jump the line. It's completely equitable. We're certainly not requiring the Secretary to do anything other than what is allowed under the Medicare statute. And perhaps this Court and other courts, in doing that, will spur the imposition of some kind of solution as to what's going on here. Because the fact is that, as I stand here before Your Honors, a year and a half after I stood in the District Court, and the Secretary is no closer to solving this problem today than they were then. And I would just suggest that the burden of this, by simply stopping the recoupment, then falls upon the government and not upon the individual provider. And I'd like to reserve the rest of my time for that. Mr. Salzman. Thank you, Your Honor. And may it please the Court, Josh Salzman for the defendants. I'd like to begin with the 405G claims first and then turn to Mandamus if that's acceptable to the Court. As this Court has recognized, the Medicare Act establishes an administrative exhaustion procedure that must be followed in all but exceptional cases. In order to demonstrate entitlement to a waiver of that exhaustion requirement, the challenger needs to make three independent showings. First, the claim needs to be merely collateral to a claim for benefits and colorable. They have to demonstrate irreparable harm. And exhaustion of the process needs to be futile. We would submit that CSUNS actually hasn't done any of those things, let alone all of them. As to the futility, as Judge Grudner talked about, they could have completed administrative exhaustion by escalating years ago. Their initial request for an administrative hearing was filed in July of 2014. That means by October of 2014, they were free to leave the backlog and proceed with exhausting their claims. By the middle of 2015, if they hadn't gotten review from the Appeals Council, the fourth and final level of administrative review, they would have been free to come and get district court review. The only reason they are still there, two years later, is because they have chosen to remain. As... And... I'd go farther than that, Your Honor. Oh, I'm sorry. There were multiple opportunities for them to make their record. And Your Honor rightly pointed out that the regulations, this is 405.1122, allows for the addition of evidence at the board stage, at the fourth and final stage. But they actually have had ample opportunity to build their record at the third stage, at the ALJ stage, notwithstanding the fact that they haven't had a hearing yet. And I'd like to, if I may, walk the Court through four regulations that together clearly show how this was supposed to play out. First is 405.1014. And what that says is when you request a hearing, one of the first things you're supposed to do at the outset, this is provision A2, says that you're supposed to identify any additional evidence that you want to have added to the record. And this is something CSUN certainly should have been able to do, because all of the documents at issue here are in their sole possession. And in fact, they claim that they gathered them and submitted them to the second level reviewer unsuccessfully. The second relevant provision is 405.1018. And that says the timing for actually submitting those documents. And what that provision makes clear is that you don't wait until you're hearing to produce your evidence, you're supposed to submit it in advance. The third relevant provision is 405.1028. And why that's relevant is because the Medicare statute makes clear they want providers to put their evidence in early. So there's a good cause requirement to get any evidence in if you are seeking to supplement the record at the third level of review. And what that provision says, again in A2, is that it is per se good cause if the reason you're putting in additional evidence is because the QIC, the second level reviewer, decided the case on a ground different from that used by the lower level reviewer. And the final provision, and this is really the crux of it all, is 405.1042, which is entitled Administrative Record. And what that provision says is that everything, every piece of paper basically that came before the ALJ, including papers that the ALJ never ruled on or never had a chance to consider, are part of the administrative record. And provision A4 of 1042 says in a case where it's escalated, the entire administrative record, all of the paper is going to be together and move forward and go up to the DAB. So they absolutely had the chance to get in their documents here. And even if for some reason that failed, as Your Honor recognized, there was again an opportunity to do that at the fourth stage, because 405.1122 allows the Appeals Council to accept additional submissions of evidence. So to the extent that they're worried about being prejudiced, keep in mind, the evidence at issue here is all documents within their sole possession. They've had an expert who testified that based on the documents in their possession, that expert was able to reach the conclusion that all 15 of these overpayments that were assessed or determined by the lower level reviewers were in error. If they want to put those same materials to the extent that their expert who testified to this for She had the opportunity to, she found that she could reach a conclusion based on these documents. It's a documentary case. They had the ability to make sure those documents were in the record. And then to make sure that if there was any judicial review after timely administrative, proper administrative exhaustion, be that through escalation or a final decision of the secretary, that the record would be more than adequate for them to do whatever they needed to do in district court. How would it play out if they put these documents in and then they escalate and the DAB doesn't do anything for years? What would it be next in your view? Escalate to district court because there's an escalation provision that applies. Not only from the third level to the fourth level, but if the DAB fails to timely act. In cases that have been escalated once already, the time limit under the regulations is 180 days. So basically, if they'd escalated twice through the third and fourth levels, they would have had the opportunity to make their full record and 270 days from their data filing, which was in July of 2014. So by the spring of 2015, they could have been in district court with the full record they wanted and had the opportunity to show that the supposed errors, the supposed failure to supply the necessary documentation to show entitlement to payment on these Medicare claims, that that documentation was actually present. They had every opportunity. Did the district court then take it up just as the DOJ would take it up in order to stop the recoupment or? Well, not only a stop to the recoupment, what we're talking about now is putting the ultimate merits in front of the district court. Under- Merits instead of the basis. Yeah, that's exactly what 405G, which is incorporated into the Medicare statute by 1395II, makes clear. What would- Provider's agreements? Stop- What about litigation, of course? I mean, we're out in the country. We're not mandating this, but you make it sound like a lot of it would just be hundreds of cases would be in the district courts, and it would just be DOJ's problem. The statute certainly provides for that, and some providers have taken advantage of the escalation option. Other providers have made different choices. I'd note that the secretary is continuing to work to try to solve the backlog. There have been settlement initiatives, for example, that have been introduced in an effort to try to address this problem, and in fact, two new settlement initiatives. This isn't in the record, but it was recently announced in the parallel administrative hospital associations litigation. Two new settlement initiatives were unveiled just a few weeks ago. This is a problem the secretary is diligently trying to tackle. It's a really intractable one, unfortunately. But some providers are choosing to wait, hoping for settlements, or deciding that they'd rather choose to wait. That's a decision up to each individual provider. But in terms of, do they have the statutory entitlement to get to district court? Every one of them does, yes. As long as they- Are there any reported district court decisions in the procedure that you described? Where there has been escalation? I'm aware of one pair of district court cases from North Carolina where there was escalation from the third level to the fourth level. There, however, the board did issue a decision. So there hadn't been an escalation past the fourth level. But the statutory framework is quite clear that once you have a final decision of the secretary, you are allowed to go to district court and the district court can reverse that on the merits if it's not supported by substantial evidence. And if you escalate twice, then the decision of the second level reviewer is considered the final decision of the secretary. Well, is the standard then different? It's a substantial evidence review as opposed to an elbow review by the ALJ? That is true, your honor. But- Why am I escalating and not doing it? But if you understand the nature of the claims they're saying here, and I encourage the court to look at April Ryan's report, both for this point and also because it, I think, is relevant to the issue of whether their claim here is merely collateral to a claim for benefits. She walks through every one of those claims and says, the second level reviewer claimed this document was missing. This signature page or this date range was not included in the records, which is a necessary criterion in documenting your entitlement to payment. And what she goes through and she says, that document's there. And if she's right and if it reaches a district court judge and the basis for decision is the absence of a document that's in the record, that decision will not be supported by substantial evidence. Well, but there's definitely some risk there when you start doing a substantial evidence standard as opposed to an elbow review. And the statute says that this department is supposed to be handling this, so why isn't the season's position correct that the risk here should fall on the secretary? If the secretary of Congress isn't providing the resources, then you should have to hold off on recoupment. Because that's not the process that Congress provided here. And also, I think it's important to remember- The process provided is that the ALJs would decide the cases in a timely way. The department isn't able to do that. That's not how the Fourth Circuit read this statute. It is, Your Honor. But I'd also point out that what we have here is really fundamentally a procedural due process claim. And even if there were a statutory deviation, even if they were to show the secretary wasn't meeting its statutory responsibilities, that wouldn't necessarily mean that the deviation took on a constitutional dimension. Here, if, for example, Congress just eliminated the third and fourth levels of review and said you get the first two levels and then you go to district court, that wouldn't be so deficient, I think, as to fail to satisfy due process on a constitutional level. And yet, that's really the implication of their due process claim. So I think when you're talking about whether they have stated a colorable constitutional claim here, they haven't remotely attempted to shoulder that burden. And I don't think it's one they can. Do you think their mandamus claim is primarily a constitutional claim? No, I don't think their mandamus claim is. That's for the 405G. For the mandamus claim, first of all, there's this threshold issue of whether or not they pleaded it, just because JA2, from their complaint, the introduction says the sole relief sought here is a stay of recoupment. They didn't ask for a hearing in 90 days. What they asked for was a stay of recoupment. And if you look at their prayer for relief, which is at page 34 of the joint appendix. Again, the only relief sought was a stay of recoupment. They didn't say, I'm entitled to a hearing in 90 days. Well, so what's the deadline for us to get a stay of recoupment? I don't think they can show a clear and indisputable right to that under the statutory scheme. The statute's quite clear. This is in 1395 DDD subpart F, that you can't recoup during the pendency of the first two levels of review. But at the third level, you're allowed to begin recoupment. In fact, federal agencies have a responsibility, generally, when money is owed to the government to go and obtain that money. I'd point out, moreover, that if- The government isn't providing the first two levels. Well, the government is certainly providing the first two levels of review, your honor. There's been no question- You're talking about the Q- I'm talking about the initial review and then the second level, the QIC. So there's the question of whether it was pleaded. Then there's the question of whether they could show any entitlement. I'd also point out on the recoupment that in addition to legal issues, there's a huge practical problem with allowing providers in their situation to get recoupment. Because in essence, what that's asking, what that would be concluding, is that every provider who appeals is entitled to an interest-free loan from the government for the duration of the proceedings. And all that would do is create massive incentives for providers to appeal every denied claim and would just compound the backlog far more. Because what you end up with is every provider, if the mere filing of an appeal from a loss at the second level of review would entitle a provider to just sort of keep the overpayment for as long as they could keep the litigation going, why wouldn't every provider appeal every claim? There's no filing fee for seeking further review. There's no downside from the provider's perspective. So there's- Why isn't there a position just on the flip side? The government gets to keep the money. Well, the government doesn't get to keep the money because escalation provides a ready avenue to review for the provider here. That's the path Congress provided. If you look at 1395 FF subpart D, it says the agency shall provide a hearing in 90 days, but in that very same subsection, it says the consequence of failure to provide a hearing in 90 days is that the provider gets the entitlement to escalate to the fourth level of review. And similarly, if they don't get a timely hearing from the appeals council, they get to escalate to district court. That's the scheme Congress designed. And the fact that they want some other option that's not in the statute. They certainly don't have a constitutional entitlement to, and there's really no statutory basis either for seeking a stay of recruitment. There's simply no provision for that. I see I'm out of time. Thank you. All right, very well. Thank you for your argument. Mr. Cain, we'll get to you in a moment. Yes, your honor. What about this possibility of just going up the chain and getting to the district court and showing there's no substantial evidence in the record to support the agency's decision if you've got the documentation? Why wouldn't that at least solve your problem if it didn't solve everybody's problem? It certainly might solve our problem if in fact we had some guarantee as we would at the ALJ level that we could in fact supplement the record. But as the court has pointed out and as- You went through a whole list of how you could have. Absolutely. But the review is completely different at the district court level as the DC circuit court found. I mean, it comes with some real cost to doing it. And there's a reason why there are thousands of people situated in the same position as CSUNS is that are not escalating. And the very reason is because the very risk of doing it is substantial. The fact is here is that the government seeks to rely upon the statute to keep these providers from exercising their rights and saying you can't go outside the statute in order to try to fashion some remedy other than what's in the statute. Yet they run away from the statute when it comes to the very protections that are provided in the statute. The fact of the matter is the recoupment as put together by Congress was based upon the fact that these providers would have a very short window upon which recoupment could be begun by the government. And before they could get an actual review of the entire record. We're talking 90 days here. Any provider can survive. But in this particular circumstance, and the level of delay at the DAB is equal to or greater than the level of the delay at the ALJ. It's ten years regardless. So essentially what escalation does is make you go to the district court where the review is a different review than it is at the ALJ level. With the risk in this particular case that your record will not be complete. Those are very real risks and costs, and we're talking about hundreds of thousands of dollars to this provider. The fact of the matter is the secretary should have provided the hearing, and the burden of this should fall upon the court. Thank you. Thank you. We thank you both for your arguments. The case is submitted, and of course, I'm going to give this to the court.